**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NADEGE EILEN, on Behalf of Herself and on Behalf of All Others Similarly Situated, | § § § § | CIVIL ACTION NO.: _____ |
| Plaintiff, | § § | |
| V. | § § | |
| JBS SOUDERTON, INC., JBS PACKERLAND, INC., and JBS USA FOOD COMPANY HOLDINGS, | § § § § § | JURY TRIAL DEMANDED |
| Defendants. | § § | |

## PLAINTIFF'S CLASS ACTION AND COLLECTIVE ACTION COMPLAINT

Plaintiff Nadege Eilen ("Plaintiff"), on behalf of herself and all others similarly situated, files this Class Action and Collective Action Complaint and Jury Demand ("Complaint") against JBS Souderton, Inc. ("JBS Souderton"), JBS Packerland, Inc. ("JBS Packerland"), and JBS USA Food Company Holdings ("JBS USA," and together, "JBS" or "Defendants").

### I.     INTRODUCTION

1.     This is a class action and collective action lawsuit brought by Plaintiff to recover unpaid wages, unpaid overtime, liquidated damages, penalties, and attorneys' fees and costs against JBS.

2.     JBS maintains illegal policies and practices requiring its hourly, non-exempt employees to perform significant unpaid work both prior to the start of their shifts and after the end of their shifts.

3.     JBS's conduct violates the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§ 333.101 *et seq.*, because JBS failed to pay Plaintiff for all hours worked and failed to pay

overtime for hours worked in excess of forty in a workweek. On behalf of herself and all others similarly situated, Plaintiff brings this action as a class action under Rule 23 of the Federal Rules of Civil Procedure. The members of the proposed class action are referred to as the "PMWA Class Members."

4.      JBS's conduct also violates the Pennsylvania common law because JBS failed to pay for all hours worked in those weeks in which Plaintiff worked fewer than forty hours. On behalf of herself and all others similarly situated, Plaintiff brings this action as a class action under Rule 23 of the Federal Rules of Civil Procedure. The members of the proposed class action are referred to as the "Common Law Class Members."

5.      JBS's conduct also violates the Fair Labor Standards Act ("FLSA"), which requires non-exempt employees to be compensated for all hours worked in excess of forty in a workweek at one and one-half times their regular rate of pay. *See* 29 U.S.C. § 207(a).

6.      On behalf of herself and all others similarly situated, Plaintiff brings this action as a collective action under the FLSA, 29 U.S.C. § 216(b). Members of the proposed collective action are referred to as the "FLSA Class Members." The PMWA Class Members, Common Law Class Members, and FLSA Class Members shall be collectively referred to as the "Class Members."

## II.      **JURISDICTION AND VENUE**

7.      This Court has personal jurisdiction over JBS Souderton, JBS Packerland, and JBS USA.

8.      JBS Souderton operates the beef processing facility in Souderton, Pennsylvania, employs Pennsylvania residents there, and directly manages the day-to-day operations at which Plaintiff, the PMWA Class Members, and Common Law Class Members work. Plaintiff's claims arise out of those Pennsylvania operations, and this Court therefore has specific personal

jurisdiction over JBS Souderton.

9.    JBS Souderton has also registered to do business in Pennsylvania and maintains a registered agent for service of process here, thereby consenting to the general jurisdiction of Pennsylvania's courts. See *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122 (2023); 42 Pa. C.S. § 5301(a)(2)(i).

10.    This Court has specific personal jurisdiction over JBS Packerland and JBS USA because each purposefully directed its conduct at Pennsylvania: JBS Packerland owns the Souderton facility.  JBS USA owns JBS Packerland and directs and oversees JBS Packerland's operations, including the timekeeping and pay policies challenged  in this Complaint. Plaintiff's claims arise out of this Pennsylvania-directed conduct.

11.    JBS Souderton, JBS Packerland, and JBS USA operate as a single integrated enterprise and joint employers.  And because of this fact, JBS Souderton's Pennsylvania contacts are also attributable to JBS Packerland and JBS USA. The exercise of jurisdiction over each Defendant comports with traditional notions of fair play and substantial justice and with the requirements of due process.

12.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 because the action involves a federal statute, the FLSA, 29 U.S.C. §§ 201, *et seq*. The Court has supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative fact. This Court also has original jurisdiction over Plaintiff's state-law claims under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2); the matter in controversy exceeds $5,000,000, the proposed classes exceed 100 members, and minimal diversity exists because at least one Plaintiff, PMWA Class Member, and Common Law Class Member is a citizen of Pennsylvania while each Defendant is a citizen of Delaware. Moreover, the

number of proposed class members in Pennsylvania is believed to exceed 100 individuals.

13.    Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred here. Plaintiff worked in this District, was denied wages in this District, and the factual basis for the claims raised in this Complaint occurred in this District.

### III.    PARTIES AND PERSONAL JURISDICTION

14.    Plaintiff Nadege Eilen is an individual residing in Pennsylvania. Her consent to join this action under 29 U.S.C. § 216(b) is filed herewith.

15.    The "PMWA Class Members" are all current and former hourly-paid sanitation workers, machine operators, production associates, trimmers, boners and knife operators, food handlers, packers, maintenance technicians, and all similar positions who worked for Defendants in Pennsylvania and who worked at least 40 hours during at least one week in the three years before the filing of this Complaint to its final resolution.

16.    The "Common Law Class Members" are all current and former hourly-paid sanitation workers, machine operators, production associates, trimmers, boners and knife operators, food handlers, packers, maintenance technicians, and all similar positions who worked for Defendants in Pennsylvania and who worked less than 40 hours during at least one week in the three years before the filing of this Complaint to its final resolution.

17.    The "FLSA Class Members" are all current and former hourly-paid sanitation workers, machine operators, production associates, trimmers, boners and knife operators, food handlers, packers, maintenance technicians, and all similar positions who worked for Defendants and who worked at least 40 hours during at least one week in the three years before the filing of this Complaint to its final resolution.

4

18.     Defendant JBS Souderton, Inc. is a Delaware corporation who owns and operates the beef processing facility at which Plaintiff and the Class Members work, located at 249 Allentown Rd, Souderton, Pennsylvania 18964. Said Defendant may be served with process by serving its registered agent, CT Corporation System, at 600 North 2nd Street, Suite 401, Harrisburg, PA 17101.

19.     Defendant JBS Packerland, Inc. is a Delaware corporation with its principal place of business at 1770 Promontory Circle, Greeley, Colorado 80634. Said Defendant may be served with process by serving its registered agent, CT Corporation System, at 600 North 2nd Street, Suite 401, Harrisburg, PA 17101.

20.     Defendant JBS USA Food Company Holdings is a Delaware corporation with its principal place of business at 1770 Promontory Circle, Greeley, Colorado 80634. Said Defendant may be served with process by serving its registered agent, CT Corporation System, at 600 North 2nd Street, Suite 401, Harrisburg, PA 17101.

21.     For all purposes relevant to this Complaint, Defendants JBS Souderton, JBS Packerland, and JBS USA operate as a single integrated enterprise and are joint employers of Plaintiff and the Class Members.

22.     These three Defendants are part of a single corporate family that operate the JBS United States beef business. On information and belief, JBS USA is the principal operating entity of that business; JBS Packerland is a subsidiary within it and the direct parent of JBS Souderton; and JBS Souderton is the operating entity for the Souderton facility where Plaintiff worked. These Defendants share common ownership and common financial control.

23.     The Defendants share common management and divide control of the Souderton operations among themselves in a hierarchy. On information and belief, JBS USA oversees and

manages the beef production operations nationwide, including of the operations of JBS Packerland. JBS Packerland, in turn, oversees, manages, and supervises the operations of the Souderton facility. JBS USA and JBS Packerland then establish the company-wide policies applicable in this case, including the pay policies at issue and human-resource policies at issue. These polices were implement and enforced by JBS Souderton and were applied to the Plaintiff and Class Members. These policies include the timekeeping and donning-and-doffing pay policies challenged here.

24.     JBS Packerland owns and controls the operations of four beef processing facilities, including the Souderton facility. JBS Souderton, in turn, conducts the day-to-day operations of the Souderton facility and directly supervises Plaintiff, the PMWA Class Members, and the Common Law Class Members, including hiring, firing, scheduling, and disciplining employees.

25.     JBS USA, JBS Packerland, and JBS Souderton maintain joint control over all hourly paid workers, including maintaining their work schedules, pay records, personnel files, timekeeping records, and other records.

26.     JBS USA, JBS Packerland, and JBS Souderton also maintain centralized control of labor relations. On information and belief, the pay and timekeeping policies that caused the unpaid wages sought in this lawsuit were established and administered above the level of the individual plant, principally by JBS USA and JBS Packerland. These policies were then enforced by JBS Souderton.

27.     Because of their interrelation of operations, common ownership and management, centralized control of labor relations, and common financial control, JBS USA, JBS Packerland, and JBS Souderton are so interrelated and integrated that they constitute a single employer and joint employers of Plaintiff and the Class Members.

28. In evaluating joint employment, courts in the Third Circuit consider the alleged employer's authority to hire and fire; its authority to promulgate work rules and set conditions of employment, including the rate and method of pay; its involvement in day-to-day supervision, including discipline; and its actual control of employee records such as payroll. *See In re Enterprise Rent-A-Car Wage & Hour Emp. Practices Litig.*, 683 F.3d 462, 469 (3d Cir. 2012).

29. Here, JBS USA, JBS Packerland, and JBS Souderton function as a single, integrated employer and as joint employers of Plaintiff and the Class Members through this integration, with JBS USA and JBS Packerland overseeing and managing operations and setting the challenged pay and timekeeping policies, JBS Packerland owning and controlling the facilities' operations, and JBS Souderton overseeing the day to day operations and supervising the workforce.

30. At all material times, JBS USA, JBS Packerland, and JBS Souderton have been an employer of Plaintiff and the FLSA Class Members within the meaning of section 3(d) of the FLSA. 29 U.S.C. § 203(d).

31. At all material times, JBS USA, JBS Packerland, and JBS Souderton have constituted an enterprise within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r), and an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), and have had an annual gross volume of business of not less than $500,000.

32. At all material times, JBS USA, JBS Packerland, and JBS Souderton have been governed by and subject to 29 U.S.C. § 207.

33. At all material times, JBS USA, JBS Packerland, and JBS Souderton have each been an employer of Plaintiff and the PMWA Class Members within the meaning of the PMWA,

*see* 43 P.S. § 333.103(g), and Plaintiff and the PMWA Class Members have been employees within the meaning of the PMWA, *see* 43 P.S. § 333.103(h).

34.     At all material times, JBS USA, JBS Packerland, and JBS Souderton were and are legally responsible for the unlawful conduct, policies, practices, acts, and omissions as described and set forth in this Complaint, as the employer of Plaintiff and the Class Members.

## IV.     FACTS

35.     JBS is one of the world's largest meat and protein producers.

36.     In the United States, JBS processes and sells beef, pork, poultry, and prepared foods, and it distributes those products to retail grocery chains, club and discount stores, restaurant chains, foodservice distributors, schools, hospitals, and export customers.

37.     To perform these operations, JBS owns and operates numerous meat processing plants, warehouses, and distribution facilities across the United States, including the beef processing facility located at 249 Allentown Road, Souderton, Pennsylvania.

38.     At the Souderton facility, cattle are slaughtered and their carcasses are broken down, trimmed, sanitized, chilled, and packaged for sale to JBS's customers. The facility operates on multiple shifts: production shifts perform the slaughter and fabrication work, and sanitation work is performed to clean and sanitize the production floor, processing equipment, and the food-contact surfaces used in that work.

39.     At the Souderton facility, JBS employs hourly-paid workers to perform the various manual labor tasks necessary for JBS to carry out these business operations.

40.     JBS employs hourly-paid, non-exempt workers to perform manual labor tasks necessary to process beef. Although these workers hold different job titles, the common element among them is that they all work in and around the beef processing operation and their duties

require them to come into contact with food, food-contact surfaces, or both.

41.    The production positions JBS uses at the Souderton facility include production associates, sanitation workers, slaughter-floor workers, trimmers, boners, knife operators, saw operators, line workers, food handlers, machine operators packers, and other similar positions.

42.    Production associates are hourly, non-exempt employees of JBS.

43.    Trimmers are hourly, non-exempt employees of JBS.

44.    Boners and knife operators are hourly, non-exempt employees of JBS.

45.    Saw operators are hourly, non-exempt employees of JBS.

46.    Line workers are hourly, non-exempt employees of JBS.

47.    Food handlers are hourly, non-exempt employees of JBS.

48.    Machine operators are hourly, non-exempt employees of JBS.

49.    Packers are hourly, non-exempt employees of JBS.

50.    Maintenance technicians are hourly, non-exempt employees of JBS.

51.    Sanitation workers are hourly, non-exempt employees of JBS.

52.    Given that hourly employees must come into contact with beef, blood, and the carcasses of animals, all food-contact surfaces, "including food-contact surfaces of utensils and equipment, must be cleaned and sanitized as frequently as necessary to prevent the creation of insanitary conditions and the adulteration of product," and "[n]on-food-contact surfaces of facilities, equipment, and utensils used in the operation of the establishment must be cleaned and sanitized as frequently as necessary" to the same end. 9 C.F.R. § 416.4(a), (b).

53.    And because the worksite likely has the presence of contaminants, JBS requires its hourly employees to don and doff sanitary clothing and personal protective equipment.

54.    Although the Plaintiff and the Class Members hold different job titles, JBS requires

all of them to don and doff sanitary clothing and personal protective equipment at the facility before and after their shifts, and JBS pays none of them for that time.

55.    As workers in a food production facility, Plaintiff and the Class Members are required to wear sanitary and protective gear, including a hairnet, blue pants, blue shirts, boots, gloves, apron, facemask, white hat, and smock amongst other items. The purpose of the sanitary and protective gear is to protect against contamination of the food products JBS sells and to protect workers from injury.

56.    The sanitary clothing is designed to eliminate the risk that contaminants — such as hair, lint, dirt, or bodily fluids — enter the beef products JBS sells to its customers. Requiring Plaintiff and the Class Members to wear sanitary clothing while working mitigates that risk and helps prevent the spread of illness and disease.

57.    The sanitary clothing and personal protective equipment is required by JBS, and Plaintiff and the Class Members cannot perform their work for JBS without it.

58.    The sanitary clothing and the personal protective equipment described above are referred to collectively in this Complaint as the "sanitary and protective gear."

59.    Plaintiff Eilen has worked for JBS at the Souderton facility since approximately February 2021. Her regular schedule is Monday through Friday, from approximately 7:00 a.m. to 5:00 p.m., at an hourly rate of approximately $21.75.  She works as a sanitation worker.  Her duties include removing and trimming contamination from beef carcasses after processing.

60.    Plaintiff Eilen is paid on an hourly rate basis, is classified as not exempt from overtime, and regularly worked more than forty hours in a workweek for JBS.

**A.    Defendants failed to pay for all time worked.**

61.    JBS maintained a policy and practice of failing to pay its employees, including

10

Plaintiff and the Class Members, for all time worked.

62.    Plaintiff and the Class Members were required to arrive at JBS's Souderton facility before their scheduled shift start times. JBS maintains locker rooms with individual lockers for its employees.

63.    JBS requires Plaintiff and the Class Members to report to the locker room when arriving at the facility to put on the sanitary and protective gear. JBS must maintain this practice to ensure compliance with applicable regulations. JBS slaughters and processes beef in federally inspected establishments regulated by the U.S. Department of Agriculture's Food Safety and Inspection Service ("FSIS") under the Federal Meat Inspection Act, 21 U.S.C. §§ 601–695.

64.    FSIS's sanitation regulations require that all persons working in contact with product, food-contact surfaces, and product-packaging materials adhere to hygienic practices while on duty to prevent the adulteration of product, and that the outer clothing and equipment they wear be suitable and sanitary. *See* 9 C.F.R. § 416.5. Those requirements include:

(1)    adhering to hygienic practices while on duty to prevent the adulteration of product and the creation of insanitary conditions;

(2)    wearing aprons, frocks, and other outer clothing made of material that is disposable or readily cleaned;

(3)    wearing clean garments at the start of each working day and changing garments during the day as often as necessary to prevent adulteration;

(4)    maintaining adequate personal cleanliness, including thorough hand-washing and sanitizing as necessary; and

(5)    being excluded from any operation that could result in adulteration if the person has or appears to have an infectious condition or open lesion.

65.    The Federal Meat Inspection Act prohibits the sale, transportation, or offer for sale or transportation in commerce of any adulterated meat product, 21 U.S.C. § 610(c), and a product

11

is adulterated if it has been prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth or rendered injurious to health, 21 U.S.C. § 601(m)(4). JBS is the primary beneficiary of the donning and doffing because it benefits by not distributing adulterated product and by avoiding the loss of customers, profits, and potential liability that would follow.

66.     The sanitary and protective gear is required to perform the work, which involves continuous interaction with dead animals and raw beef. 9 C.F.R. § 416.5 requires employees who come in contact with such product to "adhere to hygienic practices while on duty to prevent adulteration of product and the creation of insanitary conditions," including by wearing clean sanitary garments "at the start of each working day [. . . ,] changed during the day as often as necessary to prevent adulteration of product and the creation of insanitary conditions."

67.     Because of the strict need to ensure the garments are "readily cleaned" and worn at "the start of each working day," 9 C.F.R. § 416.5(b), JBS launders the sanitary and protective gear, prohibits Plaintiff and the Class Members from taking it home, and instead requires Plaintiff and the Class Members to don and doff the sanitary and protective gear at the facility.

68.     After putting on the required sanitary and protective gear, Plaintiff and the Class Members were required to walk from the locker room to the timeclock, which is located away from the locker rooms. Only after donning and doffing in the locker room and walking to the timeclock could Plaintiff and the Class Members clock-in.

69.     The time required for Plaintiff and the Class Members to don their required sanitary and protective gear before each shift and walk to the timeclock was approximately twenty to thirty minutes.

70.     JBS did not pay Plaintiff and the Class Members for the time spent donning their

sanitary and protective gear or for the time spent walking from the locker room to the timeclock before clocking in.

71.   When their scheduled shifts ended, Plaintiff and the Class Members were required to walk to the timeclock and clock out.

72.   After clocking out, Plaintiff and the Class Members were required to walk back to the locker room to remove their sanitary and protective gear.

73.   Upon arriving at the locker room, Plaintiff and the Class Members removed their sanitary and protective gear and deposited it to be laundered by JBS.

74.   The time spent walking to the locker room and doffing the gear was approximately twenty to thirty minutes after each shift.

75.   JBS did not pay Plaintiff and the Class Members for the time spent walking from the timeclock to the locker room or for the time spent doffing their sanitary and protective gear after clocking out.

76.   The time Plaintiff and the Class Members spent donning and doffing their sanitary and protective gear was required by JBS, was controlled by JBS, was performed at JBS's specific direction, was performed on JBS's premises, and was primarily for JBS's benefit.

77.   Plaintiff and the Class Members were subject to JBS's control while donning and doffing and were required to comply with JBS's instructions under threat of discipline, including possible termination.

78.   The donning and doffing of the sanitary and protective gear was integral and indispensable to the principal activities Plaintiff and the Class Members were hired to perform—the processing, trimming, sanitizing, and packaging of beef. Without donning this gear, Plaintiff and the Class Members could not perform their job duties safely, effectively, or at all, given the

applicable regulations.

79.     JBS could not have eliminated the donning and doffing without impairing Plaintiff's and the Class Members' ability to perform their daily job duties. The time spent donning and doffing was therefore integral and indispensable to their principal activities and was primarily for JBS's benefit.

**B.     Defendants did not comply with the Continuous Workday Rule.**

80.     Pursuant to the continuous-workday rule, once the first compensable activity of the day is performed, the workday has begun, and all subsequent activities are compensable regardless of how long each takes. *See* 29 C.F.R. § 790.6(a).

81.     Thus, Plaintiff and the Class Members are entitled to compensation from the time they first donned their sanitary and protective gear at the beginning of the workday to the time they finished doffing that gear at the end of the workday, including all time spent walking between the locker room and the timeclock.

82.     The pre-shift and post-shift work identified in this Complaint was compensable under the FLSA and should have been paid by JBS.

**C.   Defendants failed to comply with Pennsylvania Law.**

83.     The pre-shift and post-shift work was also compensable under the PMWA, the regulations supporting which define "hours worked" to include time an employee is required to be on the employer's premises, to be on duty, or to be at the prescribed workplace. *See* 34 Pa. Code § 231.1(a).

84.     The time Plaintiff and the Class Members spent on JBS's premises walking, donning, doffing, and walking to and from the timeclock before and after their shifts and walking on the premises is compensable under the PMWA. *See Heimbach v. Amazon.com, Inc.*, 255 A.3d

14

191, 204 (Pa. 2021); *see also Lugo v. Farmers Pride, Inc.*, 967 A.2d 963, 969 (Pa. Super. 2009).

85.     As a result of JBS's policies, Plaintiff and the Class Members were not paid for all hours worked and were not paid overtime for all hours worked in excess of forty each workweek.

86.     JBS's failure to pay for this work was willful and was not based on a good-faith and reasonable belief that its conduct complied with the law. *See* 29 U.S.C. § 255(a).

## V.    RULE 23 CLASS ACTION ALLEGATIONS

87.     Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

88.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following classes:

> **PMWA Class: Are all current and former hourly-paid sanitation workers, machine operators, production associates, trimmers, boners and knife operators, food handlers, packers, maintenance technicians, and all similar positions who worked for Defendants in Pennsylvania and who worked at least 40 hours during at least one week in the three years before the filing of this Complaint to its final resolution.**

> **Common Law Class: All current and former hourly-paid sanitation workers, machine operators, production associates, trimmers, boners and knife operators, food handlers, packers, maintenance technicians, and all similar positions who worked for Defendants in Pennsylvania and who worked less than 40 hours during at least one week in the three years before the filing of this Complaint to its final resolution.**

89.     Numerosity: The number of members in the classes is believed to exceed forty and is likely to number in the thousands, making joinder impracticable. The members' identities and compensation can be determined from JBS's records.

90.     Typicality: Plaintiff's claims are typical of the class members' claims because

15

Plaintiff and the class members were subject to the same policies and practices, were compensated in the same manner, and were denied pay for the same donning and doffing work under JBS's common course of conduct.

91.     Adequacy: Plaintiff is a representative party who will fairly and adequately protect the interests of the class members. Plaintiff's interests are aligned with those of the class, Plaintiff has retained counsel competent in class actions and wage-and-hour litigation, and Plaintiff has no interests contrary to or in conflict with the class members.

92.     Commonality: Common issues of fact and law predominate over any individual questions in this action, including:

      a.  whether Plaintiff and the class members are entitled to compensation for the time spent donning and doffing their sanitary and protective gear;

      b.  the amount of time spent donning and doffing their sanitary and protective gear;

      c.  whether Plaintiff and the class members worked more than forty hours in a workweek; and

      d.  whether JBS failed to pay Plaintiff and the class members for all hours worked, including overtime hours.

93.     Superiority: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual litigation would burden the courts and risk inconsistent results, whereas class treatment concentrates the litigation in one forum, promotes judicial economy, and is manageable because JBS's policies were uniform and its records identify the class members and their compensation.

## VI.     COLLECTIVE ACTION ALLEGATIONS

94.     Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs

16

as though fully set forth herein.

95.    Plaintiff brings this action as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of the following similarly situated employees:

> **FLSA Collective: All current and former hourly-paid sanitation workers, machine operators, production associates, trimmers, boners and knife operators, food handlers, packers, maintenance technicians, and all similar positions who worked for Defendants and who worked at least 40 hours during at least one week in the three years before the filing of this Complaint to its final resolution.**

96.    Although JBS permitted and/or required the FLSA Class Members to work in excess of forty hours per workweek, JBS denied them compensation for hours worked over forty as a result of its common policy and practice of failing to pay for donning and doffing.

97.    Plaintiff is similarly situated to the FLSA Class Members. They perform or have performed the same or similar work, regularly work or have worked more than forty hours in a workweek, are not exempt from the FLSA's overtime requirements, and were subject to the same policy and practice of non-payment, which does not depend on their individual circumstances.

98.    The FLSA Class Members are known to JBS, are readily identifiable from JBS's records, and should be notified and permitted to opt into this action under 29 U.S.C. § 216(b).

## VII.    CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### (On Behalf of the PMWA Class Members)

99.    Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

100.    The PMWA entitles covered, non-exempt employees to compensation for all hours worked in a workweek. *See* 43 P.S. § 333.104(a). The regulations implementing the PMWA define "hours worked" to include all time during which an employee is required by the employer to be

on the employer's premises, to be on duty, or to be at the prescribed workplace. *See* 34 Pa. Code § 231.1(a).

101. At all material times, Plaintiff and the PMWA Class Members were covered, non-exempt employees entitled to the PMWA's protections, and JBS was their employer within the meaning of the PMWA. *See* 43 P.S. § 333.103(g), (h).

102. The time Plaintiff and the PMWA Class Members spent donning and doffing their required sanitary and protective equipment, and walking between the locker room and the timeclock, was time they were required by JBS to be on JBS's premises, on duty, and at the prescribed workplace, and is therefore compensable "hours worked" under the PMWA. *See Lugo v. Farmers Pride, Inc.*, 967 A.2d 963, 969 (Pa. Super. 2009).

103. JBS violated the PMWA by failing to pay Plaintiff and the PMWA Class Members for all such hours worked, including the approximately twenty to thirty minutes of unpaid donning, doffing, and walking time before and after each shift.

104. As a result, Plaintiff and the PMWA Class Members are entitled to recover their unpaid wages, together with costs and reasonable attorneys' fees. *See* 43 P.S. § 333.113.

**SECOND CLAIM FOR RELIEF**
**(On Behalf of the PMWA Class Members)**

105. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

106. The PMWA requires that covered, non-exempt employees receive overtime compensation of not less than one and one-half times their regular rate of pay for all hours worked in excess of forty in a workweek. *See* 43 P.S. § 333.104(c).

107. At all material times, Plaintiff and the PMWA Class Members were covered, non-exempt employees entitled to the PMWA's overtime protections.

108. When the unpaid donning, doffing, and walking time is properly counted as hours worked, Plaintiff and the PMWA Class Members regularly worked more than forty hours in a workweek. Plaintiff, for example, was regularly scheduled for approximately fifty hours each week and performed additional uncompensated pre- and post-shift work on top of that schedule.

109. JBS violated the PMWA by failing to pay Plaintiff and the PMWA Class Members overtime at one and one-half times their regular rate for all hours worked over forty, because it excluded the compensable donning, doffing, and walking time from their recorded and paid hours.

110. Plaintiff and the PMWA Class Members are entitled to recover their unpaid overtime wages, together with costs and reasonable attorneys' fees. *See* 43 P.S. § 333.113.

### THIRD CLAIM FOR RELIEF
### (On Behalf of the Common Law Class Members)

111. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

112. Under Pennsylvania law, the elements of unjust enrichment are: (a) a benefit conferred on the defendant by the plaintiff; (b) appreciation of the benefit by the defendant; and (c) acceptance and retention of the benefit under circumstances that would make it inequitable for the defendant to retain it without payment of value.

113. Plaintiff and the Common Law Class Members conferred a benefit on JBS by performing the pre-shift and post-shift donning, doffing, and walking work that JBS required and that was necessary to JBS's beef-processing operations.

114. JBS knew of and appreciated that benefit, accepted and retained it, and used the resulting labor to produce beef products for sale, while paying nothing for the time.

115. Because the work was performed for JBS's benefit and at its direction, it would be inequitable for JBS to retain that benefit without compensating Plaintiff and the Common Law

19

Class Members for it.

116.    Plaintiff and the Common Law Class Members seek the reasonable value of their work measured at the Pennsylvania minimum wage. *See* 43 P.S. § 333.104(a).

### FOURTH CLAIM FOR RELIEF
**(On Behalf of the Common Law Class Members)**

117.    Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

118.    To recover in quantum meruit under Pennsylvania law, a plaintiff must show that she rendered valuable services, that the defendant accepted and retained those services, and that the circumstances reasonably notified the defendant that the plaintiff expected to be paid, such that it would be inequitable for the defendant to retain the benefit without paying its reasonable value.

119.    Plaintiff and the Common Law Class Members rendered valuable services to JBS by performing the required pre-shift and post-shift donning, doffing, and walking work.

120.    JBS accepted and retained the benefit of those services with reasonable notice that Plaintiff and the Common Law Class Members expected to be compensated for their time, given that JBS required the work and paid them an hourly wage for their other on-premises time.

121.    JBS failed to pay the reasonable value of that work. The Common Law Class Members seek the reasonable value of their work measured at the Pennsylvania minimum wage. *See* 43 P.S. § 333.104(a).

### FIFTH CLAIM FOR RELIEF
**(On Behalf of the FLSA Class Members)**

122.    Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

123.    The FLSA requires covered employers to compensate non-exempt employees at a

rate of not less than one and one-half times their regular rate of pay for all hours worked in excess of forty in a workweek. 29 U.S.C. § 207(a).

124. Activities performed before or after the regular work shift are compensable under the FLSA if they are integral and indispensable to an employee's principal activities—that is, an intrinsic element of those activities that the employee cannot dispense with in order to perform them. *See Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 33, 37 (2014); *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956).

125. The donning and doffing of required sanitary and protective equipment is integral and indispensable to the principal beef-processing activities Plaintiff and the FLSA Class Members were employed to perform. The equipment is mandated by federal food-safety regulation and by JBS, must be put on to perform the work safely and lawfully, and must be removed afterward, so the employees cannot dispense with it. *See IBP, Inc. v. Alvarez*, 546 U.S. 21, 30 (2005).

126. Because the donning is a compensable principal activity that starts the continuous workday, the time Plaintiff and the FLSA Class Members then spent walking to the timeclock and the corresponding post-shift walking and doffing are likewise compensable. *See IBP, Inc. v. Alvarez*, 546 U.S. 21, 37 (2005); 29 C.F.R. § 790.6(a).

127. JBS required and/or permitted Plaintiff and the FLSA Class Members to work more than forty hours per workweek but, by excluding the compensable donning, doffing, and walking time from their recorded hours, failed to pay them overtime at one and one-half times their regular rate for all hours worked over forty, in violation of 29 U.S.C. § 207(a).

128. JBS's violations were willful, in that JBS knew or showed reckless disregard for whether its pay practices violated the FLSA, entitling Plaintiff and the FLSA Class Members to a three-year limitations period. 29 U.S.C. § 255(a).

129.    Plaintiff and the FLSA Class Members are entitled to recover their unpaid overtime wages, an equal amount as liquidated damages, and their reasonable attorneys' fees and costs. 29 U.S.C. § 216(b).

## VIII.   JURY DEMAND

130.    Plaintiff hereby demands a trial by jury on all issues so triable.

## IX.     PRAYER FOR RELIEF

Plaintiff, on behalf of herself and all Class Members, respectfully requests that the Court:

a.    certify that this action may proceed as a class action under Fed. R. Civ. P. 23;

b.    certify that this action may proceed as a collective action under 29 U.S.C. § 216(b);

c.    appoint Plaintiff as the representative of the classes, and appoint her counsel as class counsel;

d.    find and declare that JBS's policies and practices described above violate the FLSA and Pennsylvania law;

e.    award all unpaid wages, unpaid overtime, liquidated damages, penalties, interest, and restitution to be paid by JBS;

f.    award costs and expenses, including reasonable attorneys' fees and expert fees;

g.    award pre-judgment and post-judgment interest, as provided by law; and

h.    order such other and further legal and equitable relief as the Court deems just, necessary, and proper.

22

Respectfully submitted:

**FELLERMAN & CIARIMBOLI LAW, P.C.**

BY: _____

Edward J. Ciarimboli, Esquire

*Counsel for Plaintiff*

AND

Don J. Foty (pending admission *pro hac vice*)
State Bar No: 24050022
dfoty@fotylawgroup.com
FOTY LAW GROUP, P.C.
2 Greenway Plaza, Suite 250
Houston, Texas 77046
Tel: (713) 523-0001
Fax: (713) 523-1116

ATTORNEYS FOR PLAINTIFF AND CLASS
MEMBERS

23

## <u>CONSENT TO PURSUE WAGE CLAIM</u>

- I, Nadege Elien_____(print name), consent and agree to pursue my claims for unpaid wages under the Fair Labor Standards Act and any applicable state wage and hour law against JBS and any of its related entities.

- I intend to pursue my claim individually, unless and until a court or arbitrator certifies the case as a collective action and/or class action. I agree to serve as the class representative for such collective action and/or class action if I am selected by my counsel.  I agree to serve as the class representative and to take on the responsibilities of serving as the class representative if selected by my counsel.

- I authorize the named Plaintiff and my attorney to file and prosecute my claim, to make decisions on my behalf concerning the litigation, including negotiating a resolution of my claim, and I also designate the named Plaintiff to make decisions on my behalf concerning entering into a fee agreement with the lawyer in this case, and I understand I will be bound by all such decisions.

- I agree to be represented by the Foty Law Group, P.C. and Fellerman & Ciarimboli Law, P.C.

- If my consent form is stricken or if I am for any reason not allowed to participate in this case, I authorize my attorney to use this Consent Form to re-file my claims in a separate or related action.

Date  June 07, 2026_____        Signature_____